Tilghman C. J.
Augustus Stephenson, a black boy, of the age of about fourteen years, was bound apprentice, with the assent of his father, to Francis Duffee, of the city of Philadelphia, and his assigns, for seven years. The indenture was executed by both father and son, before George Bartram Esq. an alderman of the city. In about twenty-five days after its date, it was assigned by Duffee without the knowledge of the father, but with the assent of the boy, before the same aider-man, to Samuel Vanlear of Chester county. By the act of 11th April, 1799, (sect. 2,) it is enacted, that, “when any master “ or mistress shall assign over his or her apprentice, to any “ person of the same trade or calling, mentioned in the in- “ denture, the said assignment shall be legal, provided the “ terms of the indenture extended to assigns, and provided “ the apprentice, or his or her parent or parents, guardian or “ guardians, shall give his, her or their consent to such as- “ signment, before some justice of the peace of the county, “ where the master or mistress shall live’’ The question in this case is, whether an assignment without the consent of the father be legal. It is contended on the part of the master, that the law is complied with, if the consent either of the apprentice or his guardian is given. The words will bear this meaning, but they will also bear another more convenient, and more analogous to the general principles of the law of parent and child, that is to say, with the consent of the apprentice, (where he has no parent or guardian,) or (where he has a parent or guardian,) with the consent of such parent or guardian. This preserves to the infant the protection of his parent or guardian, and places the assignment, so far as concerns parents and guardians, on the same footing with the original binding, for there can be no valid indenture without their consent, except in the case of paupers. It is of great importance, that the authority of the parent should be preserved as far as is consistent with a reasonable construction of this law, because in direct violation of the intent of an in *250 denture of apprenticeship, it has lately become a lucrative business to have a boy bound for the purpose of selling him, and if his consent alone is sufficient, it may be obtained by a trifling bribe perhaps, or if he be of tender years, by intimidation. When it is said that a thing may be done with the consent of one person or another, it does not always follow, that the consent of either is sufficient; it is sometimes to be understood, according to the subject matter, that in one case, the consent of one shall bind, and in another case the consent of another. We have an instance of this in the act of 29th September, 1790, on the same subject of apprentices. An infant bound apprentice, “ with the assent of his parent, guar- “ dian, or next friend, or with the assent of the overseers of “ the poor, and approbation of any two justices, &c. shall be “ as valid as if the infant had been at full age at the time of “ making the indenture.” Now it cannot be understood, that by virtue of this law every infant may be bound apprentice by the overseers of the poor and two justices, although the ■words will bear that meaning. But the true meaning is, that the assent of the parent or guardian must be had, except in cases where the infant becomes a charge on the county. The assent of the one or the other is necessary according to the nature of the case. So with regard to the law in question. Where the apprentice has no parent or guardian (a very common case), his own consent shall be sufficient, but where he has a parent or guardian, under whose protection the law has placed him on account of his own imbecility, the consent of that parent or guardian shall be necessary. The law would have been, better if it had been and instead of or, and very probably it was so intended. But I dare not take the liberty of altering what is written. The construction which I adopt comes as near.to what I suppose to have been the intent, as is consistent with the words.
It was argued that the indenture was void, because executed not before a justice, but an alderman. But consider*ing that in most respects aldermen have the power of justices, and that it has been the uniform practice to bind apprentices in the city before aldermen, I should not think the court'justified in taking the boy from his master on this account. I consider the indenture as good, but the assignment bad, for want of the consent of the father. The boy must, therefore, be discharged from Mr. Fanlear, and delivered to his first master, Duffee.
*251 Yeates J.
The traffic, in human flesh I abominate from the bottom of my heart. But it certainly is of importance to society, that minors should be instructed in some occupation, whereby they may afterwards earn an honest livelihood.
It is admitted here, that the original indenture of apprenticeship (for servitude it is not, in that case the boy must have been immediately discharged, because a father cannot sell his child) was legal, the binding having taken place with the assent of his parent, before an alderman of the city, Francis Dujfee and his assigns, who covenanted to teach him the occupation of a waiter. But it has been objected, that the assignment is invalid in this instance, not being made before some justice of the peace of the county where the master lived, according to the provisions of the 2d section of the act of 11th April, 1799. The answer is, that by the act of incorporation of the city, the aldermen thereof have the same powers and jurisdiction within the city, as justices of the peace have in the proper county. As well may it be objected, that under the original act of 20th September, 1770, an alderman has no jurisdiction in cases of dispute between the master and servant, for I know no such legal character as a justice of the peace of the city, or that an assignment of a servant before him, under the 2d section of the old law of 1700, would be subjected to a penalty of 10/., because not made before a justice of the peace of the county, according to the expressions of that act. The uniform practice has certainly been otherwise ; and it would be highly inconvenient, that persons living within the city, should be obliged to go to a justice of the peace of the county to transact such business before him.
The assignment, moreover, has been questioned, because the father of the apprentice did not consent thereto. The words of the act of April, 1799, are “ the assignment of an “ apprentice shall be legal, provided the terms of the inden- “ ture extended to assigns, and provided the apprentice, or “ his or her parent or parents, or guardian or guardians, shall “ give his, her, or their consent to such assignment.” It is said here, that or must be construed and, the consent of the parent being necessary. But this appears to me, to be the assumption of an unwarrantable liberty over the expressions of the legislature, by changing its provisions. Such a deviation could only be warranted in a clear case to effectuate the *252 plain meaning of a law. What if the apprentice consents, and the father refuses his consent, must be done with the former? Must he not be put into a way of learning his ¿zrf, mystery, occupation, or labour, whereby he may earn his living ? I will not assert, that no inconveniences can arise from a literal, grammatical adherence to the words j but I have nothing to do with the policy of the legislature, where their expressions are unambiguous. Ita lex scripta est. But may there not tbe assigned a solid .ground for the discrimination between the original indenture and the assignment of an appi’entice ? A father, or guardian, may be the best judges of the fitness of the minor for a particular trade or occupation, consulting his Wishes at the same time. But when once bound, it is of great moment, that a new master should not be obtruded on him against his own consent. Whatever policy dictated the provision, I feel myself bound by it, and, therefore, am of opinion, that the boy should be remanded to the custody of Mr. Vanlear, who claims his services, with his full consent, under the assignment.
Bk.ackenr.idge J.
The binding an apprentice carries with it the idea of binding to learn some trade or mystery. Househould service in a city, town, or village, may perhaps be said to be a sort of trade or .mystery, which may require an apprenticeship. .For it will require time and instruction to make an expert waiter, and one so instructed will receive wages ten times above that of an untaught servant. I take it therefore not to be in the idea of the parent in this case, that his child should be assigned to one out of the city, and with whom he might not have the like instruction, or the like advantage; but. more especially, the- parent cannot be supposed to have contemplated the assigning to a person, out of the city, as he must thereby lose the society and superintendance of his child, which he might still have to some extentr while he remained in the city; at least the satisfaction of having him near him, so that he could always learn the state of his health, and the treatment from his master, in which he must be considered as having an interest, and a right to seek redress if ill treated. I would incline therefore to consider it a fraud upon the parent, to assign out of the city or liberties, and to the country, where such a thing as the profession or occupation of a waiter is not so well known; but the child *253 must be employed as a servant generally in all manner of servile labour, the care of cattle, &c. &c. &c. A fraud also, and out of his contemplation, in binding to an apprenticeship to carry him to a distance. Whatever therefore may be the terms of the act; it could not be within the reason of it, that the apprentice could he assigned even with his own supposed consent, without that of the parent. I say, supposed consent, because he could not in reality have a will or dare to express it, while under the power of the master. If he had no parent or guardian, having originally bound himself, or his parent dying and having no guardian, his consent might suffice from the necessity of the case ; but having a parent or guardian, the intervention of these would seem to be necessary. For the terms of this miserably drawn act would seem to look to the intervention of these. So that in a case, where there was a parent; or no parent but a guardian, it would seem that the consent of the apprentice should alone suffice;
It would seem a construction contrary to all reason, that a parent should bind his child an apprentice in a city, which is a little world in itself, in which he lives, and that he the apprentice should by his consent alone to an assignment, be carried to a country situation, and to a distance, and that being bound to learn one mystery, he should by his own consent merely, be assigned to learn another: bound to a shoemaker for instance, and assigned to learn the trade of a taylor. To construe this law liberally, as I am inclined to do,' in favour of minors and parents, I would hold it, that an assignment must be with the consent of both apprentice and parent,, or guardian, where there are such. In this case, and' upon these grounds, I am opinion, that the assignment is void. §ui hceret in litera kceret in cortice. The reason of a law must prevail.
The apprentice discharged.